JOHN G. DEMINDS et al. *vs.* JAMES KIRKMAN.

The holder of a protested note, need not put the notice of protest in the post office, on the same day the note is protested, but he must on the next day in time for a mail of that day, unless it leaves at an unreasonably early hour. .

When the mail leaves a post office at sunrise, on the day succeeding the protest of the note, the notice need not be deposited in time to go out by that mail.

IN error from the Warren circuit court.

An action of assumpsit was brought by the defendant in error, against the plaintiffs in error, upon a note made by John G. Deminds, and indorsed by A. C. Downs, Featherston, Bland & Co., and John Cowan. The maker and indorser were sued in a joint action, under the act of the legislature of 1837, requiring all the parties to a note to be sued together.

The defendants plead non assumpsit, and the jury brought in a verdict in favor of the plaintiff below.

Upon the trial of the case, A. H. Arthur proved that as a notary public, he presented the note for payment on the day of its maturity; that it was not paid, and that he gave notice to the indorsers, Downs and Cowan, by letters addressed to them at Mount Albon and Bovina, their nearest post offices, which notices were put in the post office on the day after the protest, about 10 or 11 o'clock, A. M.; that the mail of that day left for the places to which the notices were directed, before sunrise, and that the notices to Featherston, Bland & Co., were in person.

The defendants asked the court to instruct the jury, that " to bind the indorsers, the notice should have been put in the post office in time to go by next morning's mail, of the day succeeding the protest." The court below refused this instruction, but instructed the jury " that the notice was placed in the office in time to bind the indorsers, if put into the office at any reasonable hour of that day, if they believed the mail of that day went out before sunrise."

A motion for a new trial was made and overruled.

The errors assigned are, the refusal of the court below, to give the instructions asked for by the defendants, and the error of the court in the instructions actually given.

*P. W. Tompkins,* for plaintiffs in error.

It is believed by the counsel for the plaintiffs in error, that the notice was insufficient. The old doctrine that notice long after the presentment and refusal to pay, when no special damage to the defendant was proven was good, has long since been exploded, perhaps the case of *Magadora* v. *Hart,* reported in 1 Shaw, and 12 Mod. is the last case of the kind that has been sustained, at least it is among the last. It is now the settled doctrine that notice must be given at the earliest convenient time; on the next day if possible. These notices were given the third day after protest. Such a notice was decided insufficient in *Brigden* v. *Brigden,* 11 Johns. 187, and in *Reynolds* v. *Buford,* B. Martin, 35. A similar decision is found in 10 Mass. 84. In England, inland bills, protested for non-payment and promissory notes also, will not be at all obligatory on indorsers of the same unless the holders use due diligence in giving notice. Andr. 187. 5 T. R. 239. 3 Taunt. 130, and a host of other authorities. The same doctrine prevails in America. In England the notice must be actually given or forwarded, when by general post, the day after the protest. Chit. on Bills, 506, ed. of 1836. It was decided in 2 Stra. 829, that notice should be sent on the very day of the dishonor, if any post went out on that day. In 12 Mass. Rep. 403, parties living in Jamestown, notice on day of dishonor was required. That the notice must at farthest go out by the post of the next day. Lord Tenterden is very explicit in the cases to be found in 2 Barn. and Ald. 500, and 5 Maule and S. 68. It must be by the post of the next day whether it set out early or late. See the two last cases above cited, and in addition to them, 6 East. 3. The opinion of Chief Justice Parker, expressed in 17 Mass. 449, is the most favorable, respectable opinion, I can find for the defendant in error; that goes no further than to say that if there be two mails of the day succeeding the dishonor, the notice would be good if it go

by either mail of that day; but he does not intimate an opinion that the notice would be good if deposited on that day, too late for either mail.    20 Johns. 146, and 1 Mill. 122, are to the same point.

To hold the defendant to these well settled and wholesome principles of commercial law, would be no hardship, for he had abundant time to make out and deposite the notices in time for the departure of the mail, on the morning of the day succeeding that of the protest.  It will be recollected that the note was one payable in bank; the Commercial and Railroad Bank, whose business hours of every day closed at 2 o'clock, P. M., so the note was protested at 2 o'clock, P. M. and the mail went out at 7 o'clock, A. M. of the next day, giving seventeen hours to prepare and deposite the notices in the post office, a piece of labor which would, perhaps, require some ten minutes to accomplish.   The holder knew that Lord Tenterden had said, in administering justice in the grand emporium of the commercial world, that the notice must at farthest go out by the post of the next day, whether it departed early or late.   He knew that our courts had sanctioned the doctrine; that it was the law of the land, at least he ought so to have known, and cannot be excused; but he chose to disregard the requisitions of the law.   Let him take the consequences.

*D. R. Russell*, for defendant in error.

The result of all the cases, is that reasonable diligence must be used by the party notifying.   It may be found in some cases, indeed, that a stricter rule has been laid down, but nowhere sufficiently explicit to cover the case at bar.   And it will be found, that notwithstanding the attempt which has been so frequently made to lay down a strict rule, one that shall be uniform, and by which all the cases involving the question as to the time when notice shall be given, shall be regulated, yet each of those cases in which these *dicta* have been uttered, were, of themselves, decided with strict reference to their own peculiar facts ; the judge deciding the case, making the rule which he had previously established, now bend and yield to the reason and justice of a new state of facts ; and all that has been achiev-

Deminds et al. *v.* Kirkman.

ed in the way of a uniform rule, is that to forward notice on the day after protest, by the holders, or the day after notice of its dishonor by an indorsee will be sufficient.

We will first examine those few cases in which the rule is sought to be inforced.

*Williams* v. *Smith,* 2 B. & Anderson, 496. Chitty, 518. Bayley, 68. The post did not leave until the evening of the next day. Lord Tenterden, in 1827, in *Geill* v. *Jeremy.* Notice not necessary until after day of protest, and then the next practicable. Lord Tenterden, in 1828, in *Firth* v. *Thrush,* 8 B. & Creswell, 387 ; gave an agent three weeks to discover the indorser's residence, and then a day to consult his client. Read Holroyd's opinion. Thus Lord Tenterden has ever yielded to the commands of reason.

Another *dictum* is found in 2 Wheaton, *Lenox* v. *Roberts,* that the part of the next day must be availed of. It was disregarded subsequently in 9 Peters, *Bank* v. *Swan,* and not relied on by counsel who needed it. It was no decision, and simply an expression of the opinion of the judge.

Chitty's text against us is unsustained. All his references only say he is not bound on day of dishonor.

The examination of these authorities contains almost a sufficient decision of the point. Read Chitty's Text. Betts on Bills. Bayley on Bills. *Smith* v. *Muller,* 2 Camp. by Lord Ellenboro'. 3 Kent, 106, and notes. Note 1, p. 523, Chitty on Bills. 2 Taunton, *Jameson* v. *Swinton,* 224. 4 Bingham, *Hawkes* v. *Salter.* 9 Peters, *Bank of Alexandria* v. *Swan.*

Will the court indulge the presumption that the mail was closed the night before. Is it not unreasonable to require the commercial world to rise before day to attend to its duties ?

A. is the indorser of a note, B. the holder. It is protested regularly for non-payment on the sixth of May, 1838. The notary puts notice of the protest in the post office before ten o'clock next day, but the mail by which it is transmitted, leaves between six and seven o'clock, on the morning of that day, viz : seven A. M. Is that sufficient diligence, or should the party have arisen before daylight, and written his letter, and put it in the

post office before the departure of the mail, or should he have put it in the office the evening before, viz: the day of its dishonor?

1. Shall he act upon the day of its dishonor, or which is the same, upon the day that he received notice of its dishonor?

Where the parties reside in different places, it will be sufficient to send off notice on the day next after the day of dishonor. 2 H. & Bla. 365. Notice was received of a note's dishonor, on Thursday morning—the mail went out at nine o'clock at night—no mail Friday—plaintiff wrote on Saturday. It is enough to put the notice in the office the next day, even if it miss the post that goes out at an unreasonable hour in the morning. *Gill* v. *Jeremy*, 1 M. & M. 61. *Hawkes* v. *Salter*, 4 Bing. 715.

A party has a day to give notice, viz: if he receives notice on the sixth, he may give notice on the seventh, if there be a mail on that day, if not, the next mail; and if the post leaves at an unreasonable hour of the next morning, then the second post will do. *Hartford Bank* v. *Stedman*, 3 Conn. Rep. 489.

*Hutchinson*, on the same side.

On the day when the note matured, it was presented at the Commercial and Railroad Bank at Vicksburg, and protested for non-payment. The notary who transacted the matter, protested the note; and, on the next day, between ten and eleven, forenoon, deposited in the post office at Vicksburg, written notices to Cowan and Downs, the indorsers, properly directed. The railroad car that bore the mail, left Vicksburg the same morning, before sunrise. The charge of the court below was, in effect, that if the jury found such to have been the facts, the notice was sufficient. Did the court err in that opinion? Certainly not.

On this subject of English and American jurisprudence, the decisions have been too numerous to be reviewed; nor is it here necessary. Putting this case in the attitude most favorable to the plaintiffs in error, and supposing the indorsers were so for accommodation merely, and occupied the favored relation of sureties, and thence entitled to the most prompt notice of the

dishonor of the paper, in no instance did any court, by a direct adjudication, ever require an earlier notice than that given to them.

On an idea derived from ancient feudal privileges adopted by commercial usage, the third day after that of the maturity of a bill or note, became the day of grace. That became settled.

But when and how should notice be given ? At first, it was held that the holder and his agents were entitled to the residue of the last day of grace to make out the protest, ascertain the address of the drawer or indorsers entitled to notice, and to write the notice for transmission; and that, consequently, notice on the day of protest, was premature. There was no good reason for relaxing that rule; but it was held, that, though the notice might be given on that day, it should not be required to be on that day.

When, therefore, should it be given ? At first, it was deemed sufficient to say that reasonable notice should be used; but, as that was a very variable and uncertain criterion, some judges, in their anxiety to fix on a certain criterion, called for the post next after protest; and, certainly, what could be more fluctuating ? It is not a little remarkable, that, as the Ruler of the universe had established a regular succession of days and nights, appropriating to himself one day out of every seven, it did not occur at once that one day being allotted for payment or protest, the next whole day might be designated as the day of notice.

Bankers, banks and agents, such as notaries, were allowed to attend to the matter of presenting and protesting negotiable paper. Each of these sorts of agency was allowed the next post to transmit the dishonored paper to the holder, and the holder was allowed the full day after its reception to prepare, give or transmit notice; and, in order that the holder might receive the package in order to give notice, he was not to omit all other things and be nailed to the post office, nor was the holder to be bound by the fraction of a day. *Smith* v. *Mullet*, 2 Camp. 208, Ellenborough. *Bray* v. *Hadwin*. 5 M. & S. 68.

It is needless to cite cases to show that it is well and uniformly established by the decisions, that where there are several indor-

sers, the holder may elect to notify the last, and that, when the notice is in that mode, a day is allowed to the notified indorser, to notify him who is above him ; so that each indorser has his day.

Again, where there is a choice in two or more public mails, notice by one that is the most circuitous, is sufficient.

I would never notice Chitty on Bills, except as a reference ; and never for that purpose, where a better index could be had. The text is inexplicit, and too often unsupported by the cases cited. The text referred to in the appellant's brief, is not sustained by any decision in England or America.

*Smith* v. *Williams*, 2 Barr. & Ald. 496, by Abbott, Chief Justice, in 1818, is an instance where the next post was thought to be the criterion of diligence. But the same judge, afterward, (1828,) when Lord Tenterden, allowed a month to the attorney to find the residence of the indorser, and then a day to the client to give notice.

The current of authority establishes the reasonable rule, that he who is bound to give notice, is allowed for that purpose one entire day ; that there need not be a race against time ; that the utmost possible diligence need not be exerted ; but, that, at all events, where the mail is to be the vehicle of transmission, the law is satisfied if the notice be deposited during the day after protest ; or, in case of secondary notice, the day after reception of the precedent notice. *Hawks* v. *Saller*, 4 Bing. 715. *Haynes* v. *Birks*, 3 Bos. & Pul. 602. *Bank of Utica* v. *Smith*, 18 Johns. 240. *Hartford Bank* v. *Stedman*, 3 Conn. 489. *Bank of Alexandria* v. *Swann*, 9 Peters, 45. 3 Kent's Com. 105–6–7–8, notes d. p. 106.

In this case, it is presumable the mail that departed before sunrise, was closed at least before ten of the preceding evening on the day of protest. Notice was not required on the day of protest.

*Ben Johnson*, for defendant in error.

The law is conceived to be so well settled as given in the charge of the judge to the jury, in the court below, that a

Deminds et al. *v.* Kirkman.

knowledge of the extraordinary value which of late years debtors have been in the habit of attaching to time, is perhaps the only key to a proper understanding of the reasons which have brought the plaintiffs in error into this court, to be remanded again to the circuit court, with the addition of costs and ten per cent. damages to the judgment below. 'The fact of their delaying nearly a year to prosecute their writ of error, does not afford the most satisfactory proof of their desire, to correct the error of which they complain sooner than was necessary to the security of their goods and chattels.

From the evidence brought before this court by the bill of exceptions, it appears that on the 4th day of January, 1839, Alexander. H. Arthur, the notary who protested the note sued on, presented said note at the Commercial and Railroad Bank of Vicksburg for payment, which was refused; that he gave notice of non-payment to the indorsers, Downs and Cowan, by letters addressed to them at Mount Albon, and Bovina, their nearest post offices, and put said notices into the post office at Vicksburg, on the 5th January, about 10 or 11 o'clock A. M. It was also proved that the mail for those places left before sunrise. The defendant's counsel asked the court to instruct the jury that to bind the indorsers, Downs and Cowan, the notices should have been put into the post office in time to go out by the mail which left on the morning of the fifth before sunrise, which instruction the court refused to give, and instructed them, that the notices were in time, if put into the office at any reasonable hour of the fifth, the day after protest.

Did the court err in the instruction given, and in refusing to give those asked for by the defendants below? True it does not appear from the record that the instructions given were asked for, nor, on the contrary, does it appear that they were unasked for.[*] The bill of exceptions must show the precise ground of exception. *Friar* v. *The State,* 3 Howard, 422. In the absence of proof to the contrary, the presumption of law is, that the judge acted within the sphere of his duty, and as respects

[*] In this the counsel mistook, for the record shows the instruction was asked.

the law forbidding judges to charge the jury, unless, &c., the court say, in 4 How. 376, *Carprew* admr. v. *Canovan*, it should receive a liberal and reasonable construction.    That the instructions were conformable to the well established principle of law, the authorities abundantly show.

Formerly it was doubted whether the acceptor had not the whole of the last day of grace to pay in, so that a protest even could not be made until the expiration of the third day, or on the fourth.    Kenyon, C. J., 4 D. & E. *Leftly* v. *Mills*, 170.    But it is now settled that where there has been a due presentment and demand, and a refusal to pay, notice of non-payment may be given on the day of dishonor, but in no case must it be given, or even forwarded (by mail) on the day of dishonor.    See Chitty on Bills, 8th ed. p. 513.    Do. Springfield ed. p. 62. Bailey on Bills, p. 172, and cases cited.    *Buzzard* v. *Levering*, 6 Wheaton, 102, 104.    *Shed* v. *Bret*, 1 Pick. Rep. 401.

A distinction is observed in the books between the two penny or local post, or the general post.    When the conveyance is by the former, (in the instance of parties residing in the same place) the notice, if not put into the post on the day of dishonor, must be put in so early in the morning on the day succeeding the day of dishonor, that it can be received on the same day.    See note n. Chitty on Bills, Springfield ed. p. 64.    *Smith* v. *Mullet*, 2 Camp. N. P. C. 208.

But if the conveyance is through the general post (in the instance of parties residing in different towns or places,) it is sufficient to forward (that is put into the post office, the only act the party can do towards forwarding it,) notice by the mail of the day next after the day of dishonor, or if there be no mail on the next day, then by the next mail which leaves the place after the day succeeding the day of dishonor.    *Geill* v. *Jeremy*, 1 Moody & M. p. 61.    *Williams* v. *Smith*, 2 B. & A. 496. Chitty on Bills, 8 ed. p. 518, note n.

By the mail of the day next after the day of dishonor is evidently meant the mail which is made up on that day, and not the mail made up on the evening previous to be sent out early the next morning.    If it were not so there would indeed be

often a race against time in giving notices as expressed by Lord Ellenborough in *Smith* v. *Mullet.* 2 Camp. 208. In the present case the mail left early in the morning, before sunrise. It must have been made up on the day or evening previous, and nothing remained to be done but for the mail rider to call in the morning to receive the mail bag. Had the notary called even at this early and unseasonable hour before sunrise, to put his notice into the post office, it would have been too late. If deposited in the letter box, it would not have been taken out until the next mail was made up. If he could even have gained admittance into the post office before the usual hours of business, he would have found the mail then about to start closed, so that by no possibility could the notary have forwarded notice by the mail which started out early on the morning of the 5th, without having deposited the notice in the post office on the same day of the dishonor of the note. This would indeed require that *omissis omnibus aliis negotiis,* the holder should try how swiftly notice could be conveyed at a period of such commercial embarrassment as existed in 1839, when the amount of protested paper was so great that the notary was compelled to employ several clerks, sometimes until midnight, to make out the requisite protests and notices. The law is not thus unreasonable. *Scott* v. *Lifford,* 9 East's Rep. 347.

Had the letter bag which contained the mail of the 4th, been sent off at ten or eleven o'clock, on the evening of the same day, immediately after being made up, it would not have been contended that the notices to Cowan and Downs were compelled to go by that mail. Yet the case here is not at all different, because for all practical purposes of giving notice, it was immaterial whether after the mail was made up, and put into the letter bag, on the evening of the 4th, it was then immediately sent off in post haste, or was kept until morning, since in either case it was from that time closed, so that notice could not be forwarded by it.

Ordinary, reasonable diligence, is all that is required by the law; and what shall constitute reasonable diligence, ought to be regulated with a view to practical convenience, and the usual

course of business. *Bank of Alexandria* v. *Swann*, 9 Peters' R. 33, 46. *Bank of Utica* v. *Smith*, 18 Johns. R. 230, 240.

In *Browning* v. *Kinnear*, Gow's N. P. Rep. 81, Dallas, Chief Justice, thought it sufficient when the bill became due on the 23d November, and on the 24th the plaintiff called on Maberly, a prior indorser, to know where defendant lived, but Maberly not being at home, plaintiff called again on the next day, the 25th, and then gave notice.

In *Hawkes* v. *Salter*, 4 Bing. 715, where a bill became due and was dishonored on Saturday, and the post left at half past nine, A. M., for the residence of the defendant, the drawer, fourteen miles distant, " Best, Chief Justice, expressed himself clearly of opinion that it would have been sufficient if the letter had been put into the post office before the mail started on the Tuesday morning." The holder was not bound to give notice on the day of dishonor, even to an indorser living next door to him. (See cases before cited.) Sunday was not a day for giving notice. *Bray* v. *Hadwen*, 5 Maule & S. 68. *Wright* v. *Shawcross*, 2 B. & A. 501. *Jackson* v. *Richards*, 2 Caine's Rep. 343. Chitty on Bills, 518.

To have written on Sunday would have been *contra bonos mores*. To have required the notice to be sent by Monday's mail, which left at half past nine, A. M., would have limited the holder to a fraction of a day, which the law does not regard. *Bank of Alexandria* v. *Swann*, 9 Peters, 33. Notice by Tuesday's mail, was therefore sufficient.

In *Whitwell* v. *Johnson*, 17 Mass. Rep. 449, 453, Parker, Chief Justice, delivering the opinion of the court, says, " It cannot be requisite, nor do we find that it has ever been required, to give notice to an indorser living in another town, by the very next mail after the dishonor of the note, or on the same day—the next day is early enough." " We are satisfied that it was not necessary for the plaintiff to show that notice to the indorser was put into the mail on the same day the note became due." In the same case, it was decided that if two mails should leave on the day after protest, it is not necessary to put the notice into the post office in time to go by the first mail. This

Deminds et al. *v.* Kirkman.

shows that the term next mail is not to be construed with literal strictness. If the party was not bound to send notice so early as by the first mail of the day after dishonor, he certainly was not required to send by the mail made up on the evening previous, though, literally speaking, it was the next mail that left on the day succeeding the day of dishonor.

The case of the *Bank of Alexandria* v. *Swann*, 9 Peters, 33, cited above, presents a case quite analogous to the one under consideration. In that case, the note was protested on the 25th, at Alexandria. A daily mail for Washington was made up at nine o'clock, P. M., which left between midnight and two o'clock in the morning. The notice to the indorser, residing in Washington, was put into the post office at Alexandria on the 26th, after the opening of the bank for business, but before the closing of the mail in the evening. The court decided the notice to be in due time.

The rule of law is well settled, that each indorser has a day, a whole day, for giving notice to his indorser, even though he could just as well give the notice in a few hours. *Bray* v. *Hadwen*, 5 Maule & Sel. 68. *Wright* v. *Shawcross*, 2 B. & A. 501. *Brown* et al. v. *Ferguson*, 4 Leigh's Rep. 37. *Jameson* v. *Swinton*, 2 Taunton, 224.

Surely no principle of law, justice or public policy, exacts greater diligence of the holder, who wishes to look to all the indorsers, by limiting him alone to the fraction of a day, than it does of an indorser who wishes to look to the party responsible to him.

From an examination of the above authorities, it seems clear that the notices to Cowan and Downs were in due time, and that in the language of Chancellor Kent, (Kent's Com. 3 vol. 4 ed. p. 107, note b.) " The rule as it is now generally and best understood, in England and in the commercial part of the United States," is " that notice put into the post office on the next day, (after protest) at any time of the day, so as to be ready for the first mail that goes thereafter, is due notice, though it may not be mailed in season to go by the mail of the day after the default." See 3 Kent's Com. 3d ed. p. 105–6, and notes ; note d.

Deminds et al. *v.* Kirkman.

to 106 particularly, which says expressly, that notice put into the post office at any time of the day succeeding that of the protest, is sufficient.

Mr. Justice CLAYTON delivered the opinion of the court.

This was an action against the makers and indorsers of a promissory note. The only error assigned grows out of the following charge of the court, " that the notice was placed in the post office in time, if placed there at any reasonable hour of the day next after the protest, if they believed the mail of that day went out before sunrise."

The point here presented was much considered by the court in the late case of *Downs* v. *The Planters Bank*,❋ and the authorities examined with great care. The rule then laid down as the result of our reflection, was, " that the holder need not put the notice in the office on the same day the note is protested, but he must on the next day, in time for a mail of that day, unless it leaves at an unreasonably early hour."

When the mail leaves a post office before sunrise, there is no doubt it is usually made up, and prepared for delivery to the carrier, the night before, and all letters contained in it, must have been deposited before it was closed the night before. To hold that the notice in a case like this, must be sent by the mail of the morning next after the protest, would be virtually to require that the letter should be mailed on the day of protest. This would be laying down the rule with too much strictness.

The charge and finding in this case, are in accordance with the case above referred to, and we therefore direct the judgment to be affirmed.

---

❋ The case of *Downs* v. *The Planters Bank*, cited in the text, is reported in this volume, *supra* 261.